**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-03655-DOC-ADS                               Date:  July 2, 2026

Title: Alberto Jose Mendoza v. Warden Desert View Facility, Adelanto ICE Processing
        Center et al     A# 243-015-013

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

Karlen Dubon                                       Not Present
Courtroom Clerk                                  Court Reporter

ATTORNEYS PRESENT FOR                   ATTORNEYS PRESENT FOR
PLAINTIFF:                                       DEFENDANTS:
None Present                                      None Present

PROCEEDINGS (IN CHAMBERS):   ORDER GRANTING PLAINTIFF'S
                              EX PARTE APPLICATION FOR A
                              TEMPORARY RESTRAINING
                              ORDER [3]

Before the Court is Petitioner Alberto Jose Mendoza ("Petitioner ") Ex Parte Application for a Temporary Restraining Order ("Application" or "App.") (Dkt. 3). The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78; C.D. Cal. R. 7-15.  Having considered the arguments, the Court **GRANTS** the Application.

I.     **BACKGROUND**

A.     **Facts**

Petitioner is a 37-year old man and Venezualan national. Petition ("Pet.") (Dkt. 1) ¶ 1. He entered the United States on August 16, 2022 through the border near Eagle Pass, TX. *Id.* He does not have lawful status in the United States. *See generally id.*

'

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-03655-DOC-ADS                               Date: July 2, 2026

                                                                                                                    Page 2

After arriving in the United States in August of 2022, Petitioner was initially detained by Customs and Border Patrol ("CBP") and was paroled into the United States shortly thereafter. *Id.* ¶ 1. Since his arrival, Petitioner has been ordered released on recognizance by the Department of Homeland Security through the Alternatives to Detention "ATD" program. *Id.* ¶ 2. As part of this program, Petitioner had to regularly heck in with ICE. *Id.* Petitioner is also proceeding through the asylum process. *Id.* ¶ 3.

Mr. Mendoza originally arrived in the United States because he was fleeing political persecution in Venezuela. *Id.* ¶ 3. Since arriving, he has settled in Ontario, CA and worked as a Payroll and HR manager at Mars Staffing LLC, a staffing contractor for logistics businesses in Southern California. *Id.* ¶ 4. He is a manager with the company and has paid taxes on all of the income he has earned. *Id.* Petitioner's elderly mother also lives with him in the Unites States and relies on Petitioner for monetary and emotional support. *Id.* ¶ 5.

Petitioner has complied with all of his check-in requirements and has not missed any check-ins with ICE. *Id.* ¶ 6. He also has no criminal history. *Id.*

Petitioner arrived for a check-in at the ICE Los Angeles Field Office on June 20, 2026 and was immediately detained with no notice or an opportunity to be heard prior to this re-detention. *Id.* ¶ 7. Petitioner claims that the government aggravated an exiting spine and shoulder injury when ICE agents tackled him during his re-detention. *Id.* ¶¶ 8-9. He did not attempt to resist arrest and claims that this tackling was unnecessary and unprovoked. *Id.* ¶ 9.

Since his detention, Petitioner has been held at the Desert View Facility of the Adelanto Detention Center and has not been provided with a post-detention hearing. *See id.* ¶¶ 10-11.

Petitioner filed both his Petition (Dkt. 1) and Application (Dkt. 3) on July 1, 2026. Respondents have not filed a response, but presumably oppose.

## II.      LEGAL STANDARD

To justify ex parte relief, the moving party must make two showings: (1) "the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures"; and (2) "it

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-03655-DOC-ADS                                  Date: July 2, 2026

                                                                Page 3

must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

For the Court to grant an application for a TRO, the moving party must show: (1) they are "likely to succeed on the merits" of the underlying claim; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief;" (3) "the balance of equities tips in his favor;" and (4) that the requested injunction "is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. See *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

## III.      DISCUSSION

Petitioner seeks a temporary restraining order: ordering his release from custody released from custody forthwith on the same conditions of supervision as were previously in place. Pet. ¶ 12. Having reviewed the authority provided by the Parties, the Court **GRANTS** Petitioner's request.

### A.      Likelihood Of Success On The Merits.

Petitioner argues that his detention is unlawful because he has been re-detained after being released and that his detention despite this release violates a protected liberty interest.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. Due process rights extend to noncitizens present in the United States, including those without lawful status *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001) ("But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." (cleaned up)). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-03655-DOC-ADS                     Date: July 2, 2026

                                                              Page 4

      Here, while it is not entirely clear, it appears that Petitioner was initially detained and released under section 236 of the Immigration and Nationality Act, or 8 U.S.C. § 1226(a) and then released on conditional parole.[1]

      Section 1226(a) "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings[.]" *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Specifically, § 1226(a) provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General-
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on-
>
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>
> (B) conditional parole[.]

      Courts have identified various ways that a petitioner may be granted some form of parole. The choice is "discretionary and is made on a case-by-case basis." *J.S.H.M v. Wofford*, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *6 (E.D. Cal. Oct. 16, 2025). Parole can be made for humanitarian reasons or for it providing a significant public benefit under 8 U.S.C. § 1182(d)(5)(A), or it can be for conditional parole under 8 U.S.C. § 1226(a). *Id.* Courts have recognized that typically, the term "released on their own recognizance" refers to conditional parole. *Id.*; *see also Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase 'released on recognizance' as another name for 'conditional parole' under § 1226(a)").

---

[1] *See* Order Of Release On Recognizance, https://www.ice.gov/doclib/detention/checkin/I_220A_OREC.pdf (listing section 236 as governing authority).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-03655-DOC-ADS                                    Date: July 2, 2026

Page 5

Courts consistently apply the same procedural due process analysis to petitioners under both forms of parole. The Court in *Pinchi v. Noem* explained the due process rights owed to conditional parolees in a well-reasoned decision:

> [Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria. The regulations authorizing ICE to release a noncitizen from custody require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). . . . As ICE was not authorized to release [Petitioner] if she was a danger to the community or a flight risk, the Court must infer from [Petitioner's] release that ICE determined she was neither. [Petitioner's] release from ICE custody constituted an "implied promise" that her liberty would not be revoked unless she "failed to live up to the conditions of her release." *Morrissey*, 408 U.S. at 482, 92 S.Ct. 2593. The regulatory framework makes clear that those conditions were that she remain neither a danger to the community nor a flight risk. [Petitioner] justifiably relied on the government's implied promise in obtaining employment, taking on financial responsibility for her family members, and developing community relationships.

*Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1035 (N.D. Cal. 2025).

For the same reasons, Petitioner here possessed a protected liberty interest when he was released on conditional parole and moved to Ontario and took steps to find gainful employment. *See, e.g.*, *Fernández López v. Wofford*, 2025 WL 2959319, *4-5 (E.D. Cal. 2025) (finding that petitioner released from immigration detention on parole had protected liberty interest in remaining out of custody regardless of whether she was paroled under § 1182(d)(5)(A) or § 1226(a)); *Noori v. Larose*, 2025 WL 2800149, *4, 9-

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-03655-DOC-ADS                              Date: July 2, 2026

Page 6

10 (S.D. Cal. 2025) (finding that petitioner who was paroled from immigration detention under § 1182(d)(5)(A) had protected liberty interest in remaining out of custody).

Because Petitioner has a protected liberty interest, the Court turns to the next step. To determine constitutionally sufficient procedures to protect a liberty interest, courts apply the *Mathews* test. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). This test requires courts to balance three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.*

Turning to the first factor, Petitioner had a significant liberty interest in remaining out of custody, given the Government's promise through its grant of conditional parole. *See Zadvydas*, 533 U.S. at 690. A liberty interest, such as Petitioner's, is paramount and, should therefore, be protected. *See Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("We have always been careful not to minimize the importance and fundamental nature of the individual's right to liberty." (cleaned up)). Alternatively, Petitioner also had a liberty interest created by the government's decision not to detain him after his release from jail over twenty years ago. *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.").

Under the second factor, the risk of erroneous deprivation is high. The government revoked Petitioner's parole without any opportunity for pre-detention review and opportunity to be heard. The government earlier found Petitioner to be suitable for conditional parole and that he is not a flight risk or danger to the community. Thus, the government's implicit reversal of this determination without any opportunity for pre-detention review makes the opportunity for erroneous deprivation extremely high.

Third, the government's interest in detaining Petitioner without notice, reasoning, and a hearing is low. The government has the capability to hold such a hearing and provide the requisite notice. Forcing the government to comply with proper procedures imposes a very low burden. *See Pinchi*, 792 F. Supp. 3d at 1038-39; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("If the government wishes to re-arrest

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-03655-DOC-ADS                        Date: July 2, 2026

Page 7

[Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

Accordingly, the Court joins numerous of its sister courts in finding that Petitioner's detention is unlawful because when the Government re-detained him, it revoked his conditional release in violation of the Due Process Clause. *See e.g.*, *Gergawi v. Larose*, No. 3:25-CV-3352-JES-MMP, 2025 WL 3719321, at *4 (S.D. Cal. Dec. 23, 2025); *Pinchi*, 792 F.Supp.3d at 1038; *Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *5 (S.D. Cal. Sept. 26, 2025); *C.A.R.V. v. Wofford*, No. 1:25-CV-01395 JLT SKO, 2025 WL 3059549, at *9 (E.D. Cal. Nov. 3, 2025) .

**B.       Irreparable Injury**

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where, as here, the "alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). Indeed, "unlawful detention certainly constitutes extreme or very serious' damage, and that damage is not compensable in damages." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017). Petitioner has shown evidence that he has been deprived of due process regarding his detention, so this factor tilts in his favor.

**C.       Balance of Equities and Public Interest**

"A plaintiff's likelihood of success on the merits of a constitutional claim also tips the merged third and fourth factors decisively in his favor." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023); *see California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) ("When the government is a party, the last two factors merge."). And "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Cal. Chamber of Commerce v. Council for Educ. and Research on Toxics*, 29 F.4th 468, 482 (9th Cir. 2022) (cleaned up). Indeed, "public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005); *Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1120 (9th Cir. 2023) (explaining that when a party

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**


**CIVIL MINUTES – GENERAL**


Case No. 5:26-cv-03655-DOC-ADS                                Date: July 2, 2026

                                                                    Page 8


shows a likelihood of success on the merits of a constitutional claim, "the remaining *Winter* factors favor enjoining the likely unconstitutional law").

Here, Petitioner has demonstrated a likelihood of success on the merits so the third and fourth factors also tilt in his favor.

### D.    Bond Requirement

Federal Rule of Civil Procedure 65(c) requires that, prior to granting injunctive relief, the Court require a movant to pay security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)) (quotation modified). Accordingly, the Court waives the bond requirement here, as it is unlikely that the government will incur any significant cost and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996) (citation omitted).

## IV.    CONCLUSION

For the above reasons, the Court **GRANTS** Petitioner's Application. <u>Respondents are **ORDERED** to release Petitioner from custody immediately under no more stringent conditions of release than the original Release on Recognizance. Furthermore, Respondents are **ENJOINED** from re-detaining Petitioner unless his re-detention is ordered at a custody hearing before a neutral arbiter and the government has shown justification for this detention.</u>

The Court also **ORDERS** the Parties to address whether a preliminary injunction should issue here. Should the parties wish to submit briefing, Respondents must file any brief arguing why a preliminary injunction should not issue no later than July 13, 2026, and Petitioner must file any opposing brief no later than July 20, 2026.

The Clerk shall serve this minute order on the parties.